920 A.2d 597

**David TRAIL**

v.

**TERRAPIN RUN, LLC.**

**No. 810, Sept. Term, 2006.**

Court of Special Appeals of Maryland.

April 6, 2007.

William C. Wantz, Hagerstown, for appellant.

Robert S. Paye, Cumberland, for appellee.

Panel JAMES R. EYLER, THEODORE G. BLOOM (Ret., specially assigned), RAYMOND G. THIEME (Ret., specially assigned), JJ.

EYLER, JAMES R., J.

Appellants and cross-appellees, David Trail, et al. ("appellants"),[1] appeal from a judgment entered by the Circuit Court

---

1. Appellants are those residents of Allegany County who oppose the special exception that is the subject of this case.

for Allegany County, remanding to the Board of Appeals of Allegany County ("the Board") the Board's approval of a special exception, requested by Terrapin Run, LLC, et al., appellee and cross-appellant ("appellee"), as part of appellee's plan to build a large residential community. Each party's argument centers upon whether the Board used the proper standard in granting a special exception for a planned residential development and whether the Board correctly approved the construction of a retail shopping center and wastewater treatment plant as part of the development. Finding no error in the Board's decision, we shall reverse the circuit court's judgment and remand to the circuit court with instructions to affirm the Board's decision.

## Background

Appellee applied to the Board, seeking a special exception to develop a 935 acre, 4300 unit, planned residential development in an area zoned "A" (Agriculture, Forestry and Mining) and "C" (Conservation).[2] The proposal contemplated development of condominiums in two to three story apartment style buildings, single family homes on one-half and one-third acre lots, multiple family dwellings of various types including town homes and patio homes. Appellee also planned to build an equestrian center, a community building, and a 125,000 square foot retail area to serve the commercial needs of residents. One percent of the land included in the development was to be used for the retail portion. The proposed development would have a density of 4.6 residences per acre, and would include its own water system and waste water treatment plant.

## Procedural History

In August 2005, the Board heard appellee's application for a special exception to permit the planned residential development. "Planned Residential Developments" are permitted by special exception in both the A and C districts. In determin-

---

2. Part 4 of the Allegany County Code, containing the County's zoning provisions, will be referred to as "the zoning code" or the "Allegany County zoning code."

ing that the special exception should be granted, the Board concluded that appellants had not met their burden of demonstrating that the requested special exception use would cause an adverse effect upon the surrounding properties more severe or different in kind from the effect the special exception use would have, regardless of its location within the district. In its opinion, the Board specifically addressed the potential adverse effects put forth by appellants, including the impact that the development would have on the water supply, the school system, the economy, the beauty of scenic route 40, traffic, waste water, aesthetics, noise, natural resources, harperella (an endangered species of aquatic flower), fire protection, and related services. The Board found that the evidence did not demonstrate a site-specific adverse effect in any of these areas.

In its opinion, the Board also addressed a legal argument raised by appellants at the hearing. According to appellants, in addition to considering any site-specific adverse effect caused by the special exception, the Board had to consider whether the special exception use conformed to Allegany County's comprehensive plan. Appellants' argument, as presented to the Board, was, in essence, the same as the argument presented to the circuit court and presented to this Court. That argument will be addressed in greater detail below. We note, however, that the Board found the applicable standard to be whether the special exception use was in harmony with the plan, as distinguished from whether it was in conformity with the plan, as argued by appellants.

The Board approved the retail portion of the development, finding it accessory to the principal use, the planned residential development. The Board also addressed the proposed waste water treatment plant, but did so only in regard to whether the production of waste water from the development as a whole would have a site specific adverse effect.

Following the Board's approval of the special exception, appellants appealed to the Circuit Court for Allegany County, alleging that the Board applied the wrong standard of review

and erred in approving both a retail/commercial area, which is not listed as a special exception use in A and C districts, and a waste water treatment plant, despite appellee's failure to apply for a special exception to construct a waste water treatment plant.

The circuit court declined to address appellants' arguments regarding the retail/commercial area and the waste water treatment plant. As to whether the Board applied the proper standard of review, the circuit court found that the Board erred in determining whether the proposed development was in "harmony" with the comprehensive plan but, instead, should have determined whether the requested special exception use was "consistent" with the comprehensive plan.

### Questions Presented

The questions presented by appellants, as rephrased by us, are:

1. In determining whether to grant a special exception, should the Board have reviewed the special exception use to determine whether it (1) conformed to, (2) was consistent with, or (3) was is in harmony with, the comprehensive plan?

2. Did the Board err in approving the construction of the retail area given that the land in question is zoned A and C?

3. Did the Board err in approving the construction of a wastewater treatment plant?

### I. The Relationship Between the Special Exception Use and the Comprehensive Plan

The parties agree that the Board must examine the potential site-specific adverse effects of a proposed special exception use, but they disagree as to the nature of the relationship between the requested use and the comprehensive plan that must be found to permit the special exception.

Appellants, the circuit court, and the Board, the latter's position being supported by appellee, have each used different words to describe the relationship between the proposed special exception use and the comprehensive plan that is

necessary for approval of the proposed use. The Board, and appellee on appeal, state that the standard is whether the special exception use is in harmony with the comprehensive plan. The circuit court, in reversing the Board, determined that the correct standard was whether the special exception was consistent with the comprehensive plan. According to appellants, the Board cannot grant a special exception until it has determined that the proposed use "conforms to" the comprehensive plan. Needless to say, appellants contend the phrase "conforms to" is a more exacting standard than either consistent with or in harmony with.

Our task is to determine the correct standard, and whether, with respect to the words used, in the context of this case, they represent a substantive difference or a semantic distinction without a substantive difference.

Appellants find the requirement of conformity in the definition of special exception contained in Maryland Code (1957, 2003 Repl.Vol., 2006 Cum.Supp.), Art. 66B, § 1.00(k), the statute that empowers Allegany County to adopt a zoning code. That definition provides:

> "Special exception" means a grant of a specific use that would not be appropriate generally or without restriction and shall be based upon a finding that certain conditions governing special exceptions as detailed in the zoning ordinance exist, *that the use conforms to the plan* and is compatible with the existing neighborhood.

(Emphasis added).

According to appellants, this definition limits the Board's authority to grant a special exception. In appellants' words, "the grant of zoning authority to local government and, in turn, to a board of appeals, to allow certain enumerated uses by special exception is necessarily conditioned upon fulfillment of the elements of the statutory definition," including the requirement that, "in order to grant a special exception, the board of appeals must affirmatively find 'that the use conforms to the plan.' "

Relying on the following language from *Mayor and Council of Rockville v. Rylyns Enters., Inc.*, 372 Md. 514, 814 A.2d 469 (2002), appellants allege that the "conforms to" language of section 1.00(k) elevates the comprehensive plan from merely a guide to a true regulatory device, mandating a closer level of accord between the special exception requested and the comprehensive plan. The Court in *Rylyns* stated:

> We repeatedly have noted that plans, which are the result of work done by planning commissions and adopted by ultimate zoning bodies, are advisory in nature and have no force of law absent statutes or local ordinances linking planning and zoning. Where the latter exist, however, they serve to elevate the status of comprehensive plans to the level of a true regulatory device.

*Id.* at 530, 814 A.2d 469 (footnote and citations omitted).

The circuit court based its conclusion, that the proper standard is one of consistency, on the language of the Allegany County zoning code itself. The definition of special exception within the zoning code states only that a special exception is "A land use that is subject to Board of Appeals review and approval." The legislative purpose of the zoning code, however, described in section 141–70, is as follows:

> Purpose: This Part 4 is intended to regulate land use, the size of lots and the location, size and use of buildings and other structures for the purpose of providing sufficient and appropriate amounts of land for business and industry, residential use, public and private institutions, agriculture, open space and other purposes; and to ensure that these uses *are consistent with* the policies and recommendations of the Allegany County Comprehensive Plan and to provide for the harmonious and orderly development of the County in a manner which preserves the natural environment and the quality of life of its citizens.

(Emphasis added).

The circuit court considered this a "different and more rigid standard than the phrase 'in harmony.'" Thus, the circuit

court found that the Board erred in applying the in harmony with standard and remanded the matter to the Board.

The Board based its use of the phrase "in harmony" with on case law. The Board relied heavily on the use of that language in *Schultz v. Pritts,* 291 Md. 1, 432 A.2d 1319 (1981), and *Richmarr Holly Hills, Inc. v. American PCS, L.P.,* 117 Md.App. 607, 701 A.2d 879 (1997), which will be discussed in greater detail below. The Board also relied on language in these and other cases describing master plans as guides, advisory in nature, rather than regulations.

### Section 1.00(k) of Art. 66B

It is beyond question that different words or phrases may connote different meanings. On the other hand, words have synonyms, and they must be viewed in context to determine if the choice of a particular word or phrase, as compared to a similar word or phrase, represents a semantical difference or a substantive difference.

Article 66B is a general enabling statute and, by its express terms, rests land planning and land use controls with local jurisdictions. The "Plan" is referred to several times in Art. 66B as being merely a guide. The definition of "Plan" in Art. 66B, section 1.00(h)(1), states: " 'Plan' means the policies, statements, goals, and interrelated plans ... which *constitute the guide* for the area's future development." (Emphasis added). Art. 66B, section 3.05(a)(2)(i), discussing the powers and duties of the local planning commission, states that the plan shall "Serve as a guide to public and private actions and decisions to insure the development of public and private property in appropriate relationships." (Emphasis added). Article 66B, section 3.05(a)(4)(i) states that the plan shall contain a "statement of goals and objectives, principles, policies, and standards, which shall serve as a guide for the development and economic and social well-being of the local jurisdiction."

Additionally, the terms that appellants allege have different meanings, requiring different levels of accord, are used inter-

changeably in Art. 66B without any discernible intended difference. Art. 66B, section 3.08(a) states that,

> if a local legislative body has adopted a whole plan or a plan for one or more geographic sections or divisions of the local jurisdiction, a publicly or privately owned street, square, park or other public way, ground, or open space, or public building or structure, or public utility may not be constructed or authorized in the local jurisdiction or the major geographic section of the local jurisdiction until the location, character, and extent of the development has been submitted to and approved by the planning commission as *consistent* with the plan.

(Emphasis added). Section 4.03(a) on the other hand states: "The regulations adopted by a local legislative body shall be adopted ... (1)[i]n *accordance* with the plan." (Emphasis added). Section 1.00(k), of course, uses the phrase "conforms to the plan."

Our review essentially turns on the answers to two questions: (1) what did the General Assembly authorize? and (2) what did Allegany County implement? With respect to the first question, we need not determine the relationship between a plan and a special exception use, as mandated by the General Assembly, because the Court of Appeals has already performed that task. In *Schultz v. Pritts,* Judge Rita Davidson, writing for the majority, stated the required finding as follows:

> The special exception use is a valid zoning mechanism that delegates to an administrative board a limited authority to allow enumerated uses which the legislature has determined to be permissible absent any fact or circumstance negating that presumption. The duties given the Board are to judge whether the neighboring properties in the general neighborhood would be adversely affected and *whether the use in the particular case is in harmony with the general purpose and intent of the plan.*

*Id.* at 11, 432 A.2d 1319 (emphasis added).

The Court of Appeals was clearly aware of the definition of special exception contained in section 1.00(k), as that provision

was reproduced in its entirety in the Court's opinion. *Id.* at 22 n. 6, 432 A.2d 1319. The Court's inclusion of the statutory definition of special exception, coupled with the language that the proposed use must be in "harmony with the general purpose and intent of the plan," necessarily means that the Court was of the view that the different words conveyed essentially the same meaning. That meaning, under Article 66B, is that a special exception use does not have to strictly comply with a plan. It is up to the local jurisdiction, if it so chooses, to make it so. Article 66B and the case law merely recognize that a local plan is likely to be general in nature, with potentially conflicting provisions as applied to particular circumstances.

We turn, therefore, to whether the local legislative body acted to raise Allegany County's comprehensive plan from a mere guide to a strict regulatory device.

### Special Exceptions and the Comprehensive Plan—Allegany County

Appellants make much of the following language from *Richmarr*,[3] discussing Frederick County's comprehensive plan:

Were the legislative body desirous of externally imposing the plan's recommendations as mandates, eschewing virtually all discretion that could otherwise be vested in itself or subordinate agencies, it seems to us that it could have selected, rather than "in harmony with," more directory language, such as "in conformity with," "consistent with," or "in compliance with." Instead, the legislative body chose a more flexible, malleable standard which gives the Board, in special exception cases, the latitude and freedom to decide, partly as policy questions, whether a particular proposed use would be so inimical or injurious to the announced

---

**3.** We note that, as in *Schultz*, the local ordinance at issue in *Richmarr* provided an identical definition to that contained in Section 1.00(k). 117 Md.App. at 617 fn. 5, 701 A.2d 879. Elsewhere, the ordinance provided that the Board, in order to grant a special exception, needed to find that the proposed use was in harmony with the plan. The Court ignored the "conforms" to language in reaching its decision.

objectives and goals of the comprehensive development plan so as not to be able to co-exist with the plan's recommendations.

*Id.* at 655–56, 701 A.2d 879.

In appellants' view, the preceding language demonstrates that different weights attach to the terms consistent, conformity, and harmony, with conformity constituting the most rigid standard. While that may be true in certain instances, the *Richmarr* discussion was in the context of determining whether the recommendations in a plan were binding or whether the ordinance gave the board discretion. The issue was whether the local legislative body had elevated the comprehensive plan beyond a guide, and into a regulatory tool, which had to be strictly complied with.

■ The role of the comprehensive plan in this case must be determined by a review of the local ordinances and the comprehensive plan as a whole. The Court in *Richmarr*[4] provided the following guidance in evaluating the relationship between the comprehensive plan and the zoning statute, stating:

[T]he weight to be accorded a master plan or comprehensive plan recommendation depends upon the language of the statute, ordinance, or regulation establishing the standards pursuant to which the decision is to be made. The specific types of governmental land use decisions clearly embraced by that principle are rezonings, special exceptions, and subdivision approvals. In such cases, we look first to the words of the applicable statute, ordinance, or regulation to

---

4. We note that the facts in *Richmarr* actually presented a more difficult question than in the case before us. In *Richmarr,* the proposed use was a cellular tower, which, under the existing zoning ordinance, was a special exception use in the district in question. Under the terms of the comprehensive plan, however, the district was recommended to be rezoned at an undetermined point in the future and the cellular tower would no longer be an allowable special exception use. In the present case, there is nothing in the plan suggesting a change in classification of the property in question or that planned residential developments should cease to be special exception uses in A and C districts.

divine what the enabler intended the weight to be accorded by the ultimate decision-maker to a recommendation of the plan. This becomes largely an exercise in statutory construction. Secondarily, because the field of inquiry involves the relatively complex area of land use, our predecessors have often looked to the nature and purpose of land use and master planning in order to validate and measure any legal conclusion reached regarding the interpretation of the applicable statute, ordinance, or regulation.

*Id.* at 636, 701 A.2d 879 (footnote omitted).

Additionally, as noted above, the Court of Appeals in *Rylyns,* stated the following:

We repeatedly have noted that plans, which are the result of work done by planning commissions and adopted by ultimate zoning bodies, are advisory in nature and have no force of law absent statutes or local ordinances linking planning and zoning.

Where the latter exist, however, they serve to elevate the status of comprehensive plans to the level of true regulatory device. In those instances where such a statute or ordinance exists, its effect is usually that of requiring that zoning or other land use decisions be consistent with a plan's recommendations regarding land use and density or intensity.

372 Md. at 530–31, 814 A.2d 469.

Unlike *Richmarr,* in which the Frederick County zoning code listed the specific dictionary to be used in interpreting the code, the Allegany County Code has no similar provision. The Allegany County Code does have a provision providing that the words "shall" and "will" are mandatory, section 141.71B(1) of the zoning code. Those mandatory words are not used in the context of the relationship between special exceptions and the plan, or in describing the role of the plan. For example, the zoning code could have stated that a special exception use "shall" strictly comply with the plan.

The Allegany County Comprehensive Plan, adopted by the legislative body, and updated in 2002, is described within the plan as a "guide." Specifically, the purpose section of the

comprehensive plan states that "it is the function of the Comprehensive Plan to serve as a guide to public and private actions and decisions to ensure the appropriate development of public and private property." The purpose section further provides:

> [T]he Comprehensive Plan and its elements are designed to be used as a tool to guide County elected officials and government agencies in the decision making process. It can also guide municipal and state officials, local service organizations, industrial leaders, large land holders, home builders, and other citizens to plan in concert with overall county goals.

Within the zoning code itself, the comprehensive plan is given relatively short shrift. "Comprehensive plan" is defined as: "The County Comprehensive Plan, as updated or amended, and any part of such plan." Although used occasionally throughout the text of the zoning code, the term is given no clear definition. The only provision that appears relevant to this analysis is the legislative purpose provision in the zoning code, section 141.70(A). That section provides:

> Purpose: This Part 4 is intended to regulate land use, the size of lots and the location, size and use of buildings and other structures for the purpose of providing sufficient and appropriate amounts of land for business and industry, residential use, public and private institutions, agriculture, open space and other purposes; *and to ensure that these uses are consistent with the policies and recommendations of the Allegany County Comprehensive Plan* and to provide for the harmonious and orderly development of the County in a manner which preserves the natural environment and the quality of life of its citizens.

(Emphasis added).

Coupled with the statements within the comprehensive plan itself, that it is to be used as a guide, this statement of purpose does not indicate an intent to require mandatory strict compliance with the plan. Thus, while we are aware of the statement from *Rylyns* that when an ordinance elevates a

comprehensive plan beyond a mere guide it usually requires that zoning decisions "be consistent with a plan's recommendations regarding land use and density or intensity," 372 Md. at 530–31, 814 A.2d 469, we do not find from the language used in this case, considered in context, an intent to elevate the master plan. The determination in a given situation does not necessarily turn on one word.

The Allegany County zoning code is silent as to the standard to be applied in reviewing a requested special exception. Had the Allegany County Commissioners wished that a more stringent standard be imposed than that suggested by the case law, they certainly could have included such within the code. As the Court in *Richmarr* phrased it: "Were the legislative body desirous of externally imposing the plan's recommendations as mandates, eschewing virtually all discretion that could otherwise be vested in itself or subordinate agencies," it could have selected more directory language. 117 Md.App. at 655–56, 701 A.2d 879.

We conclude that the zoning code and the comprehensive plan reflect an intent to grant the Board wide latitude in determining the appropriateness of special exceptions at specific sites.[5] As Judge Harrell reflected in *Richmarr*, "This approach makes eminently good sense particularly with regard to special exceptions," given the presumption of validity enjoyed by special exceptions. *Id.* at 656, 701 A.2d 879.

Our examination is to determine whether the comprehensive plan has been elevated beyond a guide into a true regulatory tool, requiring strict compliance by the Board. In our view, nothing within the zoning code or the comprehensive plan itself acts to elevate the plan beyond a mere guide. Whether we describe the Board's analysis as examining whether the

---

5. We note that Allegany County's subdivision regulations provide more explicit instructions on the weight accorded the comprehensive plan. *See also Board of County Comm'rs v. Gaster,* 285 Md. 233, 401 A.2d 666 (1979) and *Coffey v. M–NCPPC,* 293 Md. 24, 441 A.2d 1041 (1982). We make no determination as to whether the plan (cont. next page) has been elevated beyond a guide in the subdivision context.

special exception use is in harmony with, consistent with, or in conformity with the plan, the terms differ only semantically. In the present case, each term connotes only a general compatibility with the purpose and intent of the plan, as opposed to a strict adherence to the plan.

In the present case, planned residential developments are a special exception use in A and C districts and enjoy the presumption of validity described in *Schultz*. Thus, appellee's application is subject to the general special exception analysis, and the Board had discretionary authority.

## II. Approval of Commercial Area and Waste Water Treatment Plant

We shall examine the second and third questions presented together, as we have concluded that both the retail area and the waste water treatment plant constitute accessory uses to the requested special exception for a planned residential development.

The zoning code has separately defined the terms shopping center, neighborhood commercial, major commercial, and convenience center, and has separately allowed or prohibited these uses in certain districts. Appellants make no attempt to categorize the development sought here, but none of the uses listed are permitted or special exception uses in the A or C districts. Thus, in appellants' view, the Board lacked any authority to grant appellee a special exception that included the authority to construct a commercial or retail use.

The Board concluded that the commercial/retail use sought by appellee was incidental and accessory to the principal use. The Board stated that, "in allowing for planned residential developments in the A and C Zoning Districts, it is the Board's opinion that the drafters of the Ordinance did not intend to prohibit accessory commercial and residential uses. Thus, the Board concluded that the planned development proposed in this case is permitted as a special exception use in the A and C zoning districts." The circuit court did not reach this issue, remanding to the Board solely on the basis of the

Board's application of the in harmony standard rather than the consistent with standard.

Appellee applied for a special exception to construct a planned residential development. That term is not defined in the zoning code but "planned development" is defined in section 141–71:

> PLANNED DEVELOPMENT—Includes mobile home parks, multifamily housing, condominiums, townhouses, cluster residential developments, industrial parks, shopping centers, convenience centers, campgrounds and resorts, having water and/or sewer systems and an internal road system maintained by he developer or his assigns.

Planned developments require planning commission approval. The proposed planned residential development in this case was approved by the County Planning Commission and determined to be consistent with the. comprehensive plan. The comprehensive plan, in section IX, contemplates "Planned Developments which allow mixed uses."

The proposed development is subject to the site development criteria contained in the code provisions regulating major subdivisions. While not defined as a planned unit development (PUD), as the concept is defined in various counties, planned development within the meaning of the code means more than just a subdivision or the concept would be unnecessary. The definition itself "includes" different uses and it is reasonable to conclude that the legislative body contemplated mixed use development, within the discretion of the Board.

The Board analyzed the commercial/retail use as an accessory use, but it could have treated the use as an integral part of the planned development. In either event, the result would be the same. Approval of the proposed commercial/retail area as an accessory use was within the Board's discretion. The proposed commercial/retail area would encompass less than one percent of the overall development and is specifically tailored to serve the needs of the development's residents. The proposed retail area bears a reasonable relationship to

the overall development project and is relatively minor in scope.

■ Appellants also contend that the Board erred in granting the requested special exception, because the planned residential development included a waste water treatment plant. According to appellants, because section 141–97(b)(8) of the zoning code specifically lists sewage treatment plants as permitted special exception uses in the A and C zones, the Board erred in granting appellee's requested special exception, including allowing construction of a waste water treatment plant, without requiring that appellee file a separate, specific request for a sewage treatment plant. We disagree.

As in the case of the commercial/retail area, the waste water treatment plant was an integral part of the planned development or a permissible accessory use to the planned residential development. The fact that a waste water treatment plant was part of the proposed development was known to all concerned. The inclusion of a waste water plant in a planned community is not uncommon and was within the contemplation of the legislative body in deciding that planned residential developments are permitted by special exception. Indeed, the definition of planned developments in the zoning code expressly contemplates water and sewer systems. It is also certainly incidental, being subordinate to the primary use of a residential development, and bearing a reasonable relationship to the primary use as a reasonable mode of waste disposal.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR ALLEGANY COUNTY WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE BOARD OF APPEALS. COSTS TO BE PAID BY APPELLANTS.**