# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Richland County, South Carolina, Appellant/Respondent,

and

Central Midlands Regional Transit Authority, Respondent,

v.

The South Carolina Department of Revenue and Rick Reames, III, in his official capacity as its Director, Respondents/Appellants,

v.

Richland PDT, a joint venture consisting of M.B. Kahn Construction Co. Inc., ICA Engineering, Inc., and Brownstone Construction Group, LLC, as a unit and Individually, Third-Party Defendants.

Appellate Case No. 2016-001839

———————

Appeal from Richland County
G. Thomas Cooper, Jr., Circuit Court Judge

———————

Opinion No. 27775
Heard June 14, 2017 – Filed March 7, 2018

———————

## AFFIRMED IN PART, REVERSED IN PART AND REMANDED

———————

Andrew F. Lindemann, of Davidson & Lindeman, P.A., of Columbia, Benjamin E. Nicholson, V and M. Elizabeth Crum, both of McNair Law Firm, P.A., of Columbia, Ray N. Stevens and Ray E. Jones, both of Parker Poe Adams & Bernstein, LLP, of Columbia and Larry Smith, Richland County Attorney, of Columbia, for Appellant/Respondent.

James E. Smith, Jr. and Dylan W. Goff, both of James E. Smith, Jr., P.A., of Columbia, Jason P. Luther, Milton G. Kimpson, Dana R. Krajack, Nicole M. Wooten and Lauren Acquaviva, all of South Carolina Department of Revenue, of Columbia, for Respondents/Appellants.

Elizabeth Van Doren Gray, Robert E. Tyson, Jr. and Alexis K. Lindsay, all of Sowell Gray Robinson Stepp & Laffitte, LLC, of Columbia, for Respondent.

Robert F. Lyon, Jr. and John K. DeLoache, both of Columbia, for Amicus Curiae, South Carolina Association of Counties.

---

**JUSTICE KITTREDGE:** This direct cross-appeal involves the scope of the authority the Department of Revenue (DOR) to enforce various provisions of state law relating to the imposition of a transportation penny tax by Richland County (County) and the County's expenditure of the funds generated by the tax. After DOR conducted an audit and informed the County that DOR intended to cease future remittances to the County based on purported misuse of funds, the County filed a declaratory judgment action in circuit court, arguing DOR lacked the authority to stop payments and seeking a writ of mandamus compelling DOR to continue remitting revenues. DOR counterclaimed seeking a declaration that the County's expenditures were unlawful, an injunction to prohibit future unlawful expenditures, and alternatively, the appointment of a receiver to administer the County's tax revenues. Following a hearing, the circuit court issued a writ of mandamus compelling DOR to remit the tax revenues, denied injunctive relief, and refused to appoint a receiver. Both the County and DOR appealed. For the reasons that follow, we affirm in all respects except we reverse the circuit court's denial of DOR's request for injunctive relief. DOR is entitled to an injunction

requiring the County to expend the funds generated by the tax solely on transportation-related projects in accordance with the law.

## I.

Through the Optional Methods for Financing Transportation Facilities Act (Transportation Act),[1] the General Assembly has authorized the governing body of a county to "impose by ordinance a sales and use tax in an amount not to exceed one percent within its jurisdiction for a single project or for multiple projects and for a specific period of time to collect a limited amount of money." S.C. Code Ann. § 4-37-30(A) (Supp. 2017). This is commonly referred to as the "penny tax." The types of projects permitted to be funded with such a tax are "highways, roads, streets, bridges, mass transit systems, greenbelts, and other *transportation-related projects*." *Id*. § 4-37-30(A)(1)(a)(i) (emphasis added). The revenues generated from such a tax must be used in accordance with statutory restrictions imposed by the General Assembly—namely, proceeds must be used for the capital costs of the types of transportation projects identified in the Transportation Act. *Id*. § 4-37-30(A)(15).

To implement a transportation penny tax, "[t]he governing body of a county may vote to impose the tax authorized by this section, subject to a referendum, by enacting an ordinance." *Id*. § 4-37-30(A)(1). The local ordinance must specify the projects for which the proceeds of the tax are to be used; the length of time for which the tax is to be imposed; "the estimated *capital cost* of the project or projects to be funded in whole or in part from proceeds of the tax;" and the "anticipated year the tax will end." *Id*. § 4-37-30(A)(1) (emphasis added). At issue in this case is whether and to what extent certain costs qualify as "capital costs" and thus are considered proper expenditures of penny tax revenues.

DOR was "created to administer and enforce the revenue laws of this State," S.C. Code Ann. § 12-4-10 (2014), and is authorized "to conduct audits involving all taxes." *Id*. § 12-4-387 (2014). The scope of DOR's activities is quite broad; indeed, DOR "employees and officers are acting within the scope of their employment when administering *any South Carolina statute* which has not been held to be unconstitutional or unlawful by a final decision of a court of competent jurisdiction." *Id*. § 12-4-325(B) (2014) (emphasis added).

---

[1] S.C. Code Ann. §§ 4-37-10 to -50 (Supp. 2017).

DOR administers and collects the penny tax in "the same manner that other sales and use taxes are collected." *Id.* § 4-37-30(A)(8); *id.* § 12-36-2660 (2014) (providing DOR "shall administer and enforce" the provisions of the Sales and Use Tax Act). Monies generated through a tax imposed under the Transportation Act are considered to be state tax revenues—not local tax revenues.[2] *See id.* § 12-54-15 (2014) (providing every tax imposed, along with increases, interest, and penalties are considered owed "to the State"); *id.* § 4-37-30(A)(9) (providing taxes authorized by the Transportation Act are subject to the general enforcement provisions of the tax code).

Under these enabling provisions of the Transportation Act, on July 18, 2012, the County enacted Ordinance No. 039-12HR (Ordinance) scheduling a referendum on November 6, 2012, for the purpose of seeking approval from voters for a penny sales and use tax (Penny Tax). The Ordinance referenced various provisions of the Transportation Act and proposed the imposition of a tax for twenty-two years for the following projects:

> (d) The Sales and Use Tax shall be expended for the costs of the following projects . . . for the following purposes:
>
>> (i) Improvements to highways, roads (paved and unpaved), streets, intersections, and bridges including related drainage system improvements. Amount: $656,020,644;
>>
>> (ii) Continued operation of mass transit services provided by Central Midlands Regional Transit Authority including implementation of near, mid and long-term service improvements. Amount $300,991,000; and
>>
>> (iii) Improvements to pedestrian sidewalks, bike paths, intersections and greenways. Amount: $80,888,356.

The Ordinance further provided:

---

[2] In this regard, an "[a]ction may be brought at any time by the Attorney General, in the name of the State, to recover taxes, penalties, and interest due under [Title 12]." S.C. Code Ann. § 12-54-17 (2014).

The imposition of the sales and use tax and the use of sales and use tax revenue, if approved in the referendum, shall be subject to the conditions precedent and conditions or restrictions on the use and expenditure of sales and use tax revenue established by the [Transportation] Act, the provisions of this Ordinance, and other applicable law. Subject to annual appropriations by County Council, sales and use tax revenues shall be used for the costs of the projects established in this Ordinance, as it may be amended from time to time, *including, without limitation, payment of administrative costs of the projects*, and such sums as may be required in connection with the issuance of bonds, the proceeds of which are applied to pay costs of the projects. All spending shall be subject to an annual independent audit to be made available to the public.

(emphasis added). Among other things, the parties dispute whether the County properly characterizes certain costs as "administrative costs."

The referendum passed. The Penny Tax became effective beginning May 1, 2013, and is authorized to run for twenty-two years (through April 30, 2035) to raise over $1 billion for specified transportation projects throughout Richland County. Since taking effect, the Penny Tax has generated around $5 million in revenues per month for Richland County. Prior to this dispute, and in accordance with its statutory mandate, DOR allocated and remitted net revenues to the State Treasurer on a monthly basis. Those monies (with interest) were then distributed by the State Treasurer to the County on a quarterly basis as required by the Transportation Act. Specifically, section 4-37-30(A)(15) provides the State Treasurer is to hold these funds in a designated account separate from the general fund of the state, and once distributed, "these revenues and interest earnings must be used only for the purpose stated in the imposition ordinance."

At some point after the Penny Tax became effective, DOR received information concerning the County's possible misuse of Penny Tax funds. In April 2015, DOR initiated an audit to determine the County's compliance with state tax laws, specifically including the Transportation Act. *See* S.C. Code Ann. § 12-4-387 ("The Department of Revenue *shall* use available personnel to conduct audits involving *all taxes* to promote voluntary compliance and to collect revenues for the general fund of the State and designated accounts." (emphasis added)); *id*. § 12-54-100 to -110 (authorizing DOR to conduct examinations and investigations and to issue a summons for any person or political subdivision of the State requiring that

person or entity to appear, produce documents, and answer questions).  The County did not object to the audit or to DOR's authority to conduct it.

Following the audit, DOR informed the County that it had uncovered (1) evidence of public corruption;[3] (2) evidence of criminal violations of state tax laws[4] and (3) unlawful expenditures of Penny Tax revenues by County Council.

DOR identified specific expenditures it believed were problematic, including the use of more than $554,000 in Penny Tax funds to organize and staff the County's Small Local Business Enterprise (SLBE) Program, which was established as a county-wide program intended to support all facets of County operations—not just Penny Tax projects.  These expenses included more than $200,000 in legal services related to "SLBE Program Administration"; approximately $219,000 in personnel costs; $122,000 for a software management system; and $13,000 for website development.  In noting these expenditures, DOR explained, "While a [SLBE] program may be laudable, it is simply not allowed under the state laws governing this type of [transportation] tax.  If [County] Council wants to encourage small and local business participation in County projects[,] it should do so with general fund dollars—not with dollars approved by voter referendum for an earmarked purpose."

DOR also noted the County was paying *two* public relations firms monthly payments of $25,000 each for the provision of "public information services" in addition to reimbursing these firms for expenses such as brochures, mailings, business cards, website maintenance, catering, mileage, and computer and cell phone allowances.  It was unclear exactly what work these firms performed since a fully operational public information office already existed within the County and because no documentation existed to detail what specific services were provided, the number of hours spent on these projects, or how much each service cost.

DOR further took issue with the more than $38,000 the County spent under a vague and duplicative "mentor-mentee" arrangement whereby the County

---

[3] DOR forwarded these findings to SLED for investigation.

[4] According to DOR, this investigation resulted in criminal convictions of both the former chair of County Council and the former president of the Central Midlands Regional Transit Authority Board.

contracted with certain inexperienced individuals to perform more than $400,000 in real-estate and legal services, then paid each of those individuals and an experienced contractor/vendor $200 per hour (for a combined cost of $400 per hour) to "mentor" and "be mentored" and learn how to perform the very services they were contracted to provide.

Faced with these dubious expenditures, the County put forward the position that all these expenditures were properly characterized as "administrative costs" under the Ordinance.

Nevertheless, the day following the audit, the County responded that it was "shocked and alarmed" and expressed a willingness to "immediately invoke measures to protect and preserve county money and assets" and reimburse any inappropriate expenditures of Penny Tax funds that may have occurred. Over the next several months, officials from DOR and the County continued written and in-person discussions regarding the results of DOR's audit.

Primarily, DOR correctly asserted the County's expenditure of Penny Tax funds on "administrative costs" that were unrelated to any specific transportation project were improper as they exceeded the scope of the Transportation Act. DOR informed the County that regardless of what "administrative costs" the County's Penny Tax Ordinance purported to allow, only those costs allowable under the Transportation Act were proper expenditures of Penny Tax funds. However, DOR also acknowledged this might include certain limited transportation-related administrative costs:

> While some administrative costs may be appropriate expenditures under the [T]ransportation [Act], the use of the term "capital costs" in the statute gives some guidance on what administrative costs may be properly allowable under the law. The term "capital cost" is not defined in the law. However, "capital costs" are generally considered one-time costs incurred for the creation or improvement of tangible property, either real or personal, such as buildings, infrastructure[,] and equipment. . . . The concept of "capitalized costs" for tax purposes is described in detail in Internal Revenue Code (IRC) §§ 263, 263A, and the accompanying regulations. . . . Since the [Transportation Act] does not define "capital costs," these Internal Revenue Code principles can be used to provide guidance as to which costs are properly allowable under the [T]ransportation [Act].

In an effort to assist the County in identifying and implementing necessary corrections to achieve compliance with state law, DOR explained the potential utility of IRC §§ 263–263A and provided a five-page written guide to help the County develop guidelines to determine which "administrative" costs could appropriately be paid with Penny Tax funds.  However, the County insisted it was unnecessary to implement any additional cost-allocation standards (such as IRC §§ 263–263A) to ensure future Penny Tax expenditures complied with the law.  Specifically, the County contended its financial recordkeeping procedures were adequate and that more detailed substantive guidelines for determining whether costs were Penny Tax eligible under the Transportation Act were not needed.  In response, DOR expressed concern that the County refused to "rectify a core problem of the County's Penny Tax Program—the absence of a uniform standard for determining qualifying expenditures to ensure all Penny Tax revenue is spent specifically on transportation-related projects."

Following several additional meetings between County and DOR officials in an effort to reach an agreement, DOR determined further action was necessary to prompt the County's compliance with the law.  On April 27, 2016, DOR informed the County that, based on DOR's responsibility to administer the Penny Tax and enforce revenue laws, DOR planned to immediately cease allocations of revenue to the County's fund until the County adopted a method of evaluating qualifying expenses and brought its Penny Tax program into compliance.

Less than a month later, the County filed this action seeking various forms of relief, including a declaration that the County "is not subject to [DOR]'s directives, demands, or orders on any matter related to [the] County's spending of the Penny Tax Revenues," an injunction prohibiting DOR from issuing directives or demands regarding the County's Penny Tax expenditures, and a writ of mandamus to compel DOR to remit all future Penny Tax revenues to the State Treasurer for disbursement to the County.

DOR and its Director filed an answer and counterclaims seeking declaratory and injunctive relief, as well as the reimbursement of improper expenditures of Penny Tax funds.[5]  Specifically, DOR sought injunctive relief prohibiting the County

---

[5] DOR also asserted third-party claims against the County's project development team (PDT) and its members M.B. Kahn Construction Co., ICA Engineering, Inc., and Brownstone Construction Group, LLC, including causes of action for civil

from making any further expenditures of Penny Tax funds until the County adopted some form of substantive framework for evaluating whether expenditures of Penny Tax funds qualify as allowable costs under the Transportation Act and, alternatively, for the appointment of a receiver to marshal, administer, and enforce the proper expenditures of Penny Tax monies. During the hearing before the circuit court, the County challenged whether DOR had standing to seek injunctive relief or seek the appointment of a receiver because, according to the County, DOR has no interest in the County's Penny Tax program.

Following a hearing, the circuit court issued an order (1) granting the County's petition for a writ of mandamus directing DOR to remit the outstanding Penny Tax revenues; (2) finding DOR had "special interest" and "public importance" standing to assert its motions, defenses, and counterclaims; and (3) denying all requests for injunctive relief and DOR's request for the appointment of a receiver. Both parties filed notices of appeal, upon a joint request of the parties, the appeal was certified to this Court pursuant to Rule 204(b), SCACR.

## II.

On appeal, the County argues DOR lacks standing to raise affirmative defenses and counterclaims and that the circuit court erred in refusing the County's request for a temporary injunction. In its cross-appeal, DOR argues the circuit court erred in issuing a writ of mandamus and in denying its motions for an injunction and for a receiver. We address each of these arguments in turn.

### A. DOR's Standing to Pursue Affirmative Defenses and Counterclaims

The County argues the circuit court erred in finding DOR has standing to assert defenses and counterclaims. Specifically, the County claims public importance standing does not apply to an executive branch agency like DOR and that "special interest" standing is neither available to nor established by DOR in this case. We find DOR has standing in this case.

---

conspiracy and constructive fraud arising from improper self-dealing that led to the PDT obtaining a $31 million contract from the County through an improper procurement process. The circuit court dismissed DOR's third party claims on the basis that DOR had no standing to assert claims against private parties and that the PDT and its members were not proper third parties under Rule 14, SCRCP. The dismissal of those claims is not the subject of this appeal.

In a dispute between two government agencies, "the complaining agency must at least show that it has some special interest from which it is charged with responsibility that may be adversely affected by the action attacked." *Camp v. Bd. of Pub. Works of City of Gaffney*, 238 S.C. 461, 469–70, 120 S.E.2d 681, 685 (1961). When a state agency has significant duties relating to the subject matter of the action, the agency's real and substantial interest in the case is established. *Charleston Cty. Sch. Dist. v. Charleston Cty. Election Comm'n*, 336 S.C. 174, 181, 519 S.E.2d 567, 571 (1999) (finding State Election Commission's administrative duties in regulating county commission's preparation and distribution of ballots and statutory power to promulgate regulations established the entity's real and substantial interest in the case). Moreover, a party who names a state agency in a complaint and motion cannot thereafter claim the state agency lacks standing to appear and defend itself in the action. *Id*.; *see also* Rule 13(a), SCRCP (A counterclaim is compulsory "if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim.").

Based on these authorities, the circuit court properly found that DOR's extensive administrative, oversight, and enforcement responsibilities in the Transportation Act and throughout Title 12 of the South Carolina Code confer upon DOR a duty in ensuring the County's expenditures of Penny Tax revenues comply with the revenue laws DOR is charged with enforcing. S.C. Code Ann. § 12-4-10 (2014) (establishing DOR was "created to administer and enforce the revenue laws of this State"); *id*. § 12-4-325(B) (setting forth the broad scope of DOR authority which includes "administering any South Carolina statute which has not been held to be unconstitutional or unlawful by a final decision of a court of competent jurisdiction"); *id*. § 12-4-387 (DOR is authorized "to conduct audits involving all taxes"); *see id*. § 4-37-30(A)(8) (providing the Penny Tax is administered and collected by DOR in the same manner as other sales and use taxes); *id*. § 12-36-2660 (providing DOR "shall administer and enforce" the provisions of the Sales and Use Tax Act); *see also id*. § 4-37-30(A)(9) (providing taxes authorized by the Transportation Act are subject to the general enforcement provisions of the tax code). Because DOR is the agency statutorily tasked with administering the Penny Tax program, and the expenditure of millions of dollars of Penny Tax revenues is an issue of wide concern both to DOR and to the residents and taxpayers of Richland County, the circuit court correctly determined DOR has standing, and we affirm.[6]

---

[6] The County also argues that principles of Home Rule and Separation of Powers

## B. Writ of Mandamus

Next, DOR argues the circuit court erred in issuing a writ of mandamus directing it to continue remitting all Penny Tax revenues to the State Treasurer despite its concerns about improper expenditures, arguing its broad administrative powers include the authority to determine whether Penny Tax revenues are being used in accordance with the law.  DOR seems to acknowledge it has a duty to remit Penny Tax revenues; however, DOR strenuously argues that its specific role in administering the Penny Tax and its general authority to enforce tax laws demonstrate that its duty is not a ministerial one.  Although we acknowledge DOR's broad administrative duties, we reject DOR's argument.  Our analysis is controlled by the language of section 4-37-30 (A)(15), which we find imposes upon DOR a ministerial duty to remit Penny Tax revenues.  We therefore affirm.

"Whether to issue a writ of mandamus lies within the sound discretion of the trial court, and an appellate court will not overturn that decision unless the trial court abuses its discretion." *Charleston Cty. Sch. Dist. v. Charleston Cty. Election Comm'n*, 336 S.C. 174, 179, 519 S.E.2d 567, 570 (1999) (citing *Jolly v. Marion Nat'l Bank*, 267 S.C. 681, 685–86, 231 S.E.2d 206, 208 (1976); *Linton v. Gaillard*, 203 S.C. 19, 23, 25 S.E.2d 896, 898 (1943)).  "An abuse of discretion arises where the trial court was controlled by an error of law or where its order is based on factual conclusions that are without evidentiary support."  *Id*. (citing *Tri-County Ice and Fuel Co. v. Palmetto Ice Co.*, 303 S.C. 237, 242, 399 S.E.2d 779, 782 (1990)).

---

preclude a finding that DOR has standing to pursue its defenses and counterclaims. We reject these arguments and affirm the circuit court pursuant to Rule 220(b)(1), SCACR, and the following authorities: S.C. Code Ann. § 4-9-25 ("All counties of the State, in addition to the powers conferred to their specific form of government, have authority to enact regulations, resolutions, and ordinances, *not inconsistent with the Constitution and general law of this State . . . .*" (emphasis added)); *Riverwoods, LLC v. Cty. of Charleston*, 349 S.C. 378, 386, 563 S.E.2d 651, 656 (2002) (where a county ordinance is inconsistent with the enabling act, "the County's assertions regarding Home Rule provide it no refuge"); *Knotts v. S.C. Dep't of Nat. Res.*, 348 S.C. 1, 7, 558 S.E.2d 511, 514 (2002) ("Separation of powers is not predicated on differentiating between who actually spends the money, but on whether [one governmental] branch assumes powers belonging to another branch of government.").

"To obtain a writ of mandamus requiring the performance of an act, the petitioner must show: (1) a duty of respondent to perform the act; (2) the ministerial nature of the act; (3) the petitioner's specific legal right for which discharge of the duty is necessary; and (4) a lack of any other legal remedy." *Wilson v. Preston*, 378 S.C. 348, 354, 662 S.E.2d 580, 582–83 (2008) (citing *Riverwoods, LLC v. County of Charleston*, 349 S.C. 378, 563 S.E.2d 651 (2002)). A writ of mandamus "'is designed to promote justice, subject to certain well-defined qualifications. Its principal function is to command and execute, and not to inquire and adjudicate.'" *Charleston Cty. Sch. Dist. v. Charleston Cty. Election Comm'n*, 336 S.C. 174, 182, 519 S.E.2d 567, 571–72 (1999) (quoting *Willimon v. City of Greenville*, 243 S.C. 82, 86–87, 132 S.E.2d 169, 170–71 (1963)).

"The duties of public officials are generally classified as ministerial and discretionary (or quasi-judicial)." *Wilson v. Preston*, 378 S.C. 348, 354, 662 S.E.2d 580, 583 (2008) (citing *Redmond v. Lexington Cty. Sch. Dist. No. Four*, 314 S.C. 431, 445 S.E.2d 441 (1994)). "The character of an official's public duties is determined by the nature of the act performed." *Id*. (citing *Long v. Seabrook*, 260 S.C. 562, 197 S.E.2d 659 (1973)). "The duty is ministerial when it is absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts." *Id*. (citation omitted). "It is ministerial if it is defined by law with such precision as to leave nothing to the exercise of discretion." *Id*. "In contrast, a quasi-judicial duty requires the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Id*.

The relevant statutory provision provides:

> The revenues of the tax collected in each county pursuant to this section *must* be remitted to the State Treasurer and credited to a fund separate and distinct from the general fund of the State. After deducting the amount of refunds made and costs to the Department of Revenue of administering the tax, . . . the State Treasurer *shall* distribute the revenues and all interest earned on the revenues while on deposit with him quarterly to the county in which the tax is imposed, and these revenues and interest earnings must be used only for the purpose stated in the imposition ordinance.

S.C. Code Ann. § 4-37-30 (A)(15) (emphasis added).

Here, in the course of conducting an audit, DOR discovered County expenditures which it believed to be a glaring misuse of Penny Tax funds. Despite DOR's broad investigative and enforcement powers, it is beyond dispute that the relevant duty is set forth in section 4-37-30(A)(15) and that the legislature's use of the term "must" in a statute means that the action is mandatory. *S.C. Police Officers Ret. Sys. v. City of Spartanburg*, 301 S.C. 188, 191, 391 S.E.2d 239, 241 (1990). "Under the rules of statutory interpretation, use of words such as 'shall' or 'must' indicates the legislature's intent to enact a mandatory requirement." *Collins v. Doe*, 352 S.C. 462, 470, 574 S.E.2d 739, 743 (2002). Because the Legislature's use of mandatory language is unambiguous, this Court has no right to impose another meaning. *See Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000) ("Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." (citation omitted)). We therefore find the circuit court correctly concluded DOR's duty to remit Penny Tax funds is ministerial, and we affirm the writ of mandamus.

## C. Denial of Injunctive Relief

Both parties argue the circuit court erred in denying their respective requests for injunctive relief. Specifically, the County contends it is entitled to a temporary injunction prohibiting DOR from issuing directives, demands, or orders that the County adopt and implement appropriate safeguards to ensure that expenditures of Penny Tax funds are proper under the Transportation Act. Conversely, DOR argues it is entitled to an injunction forbidding the County from making further expenditures of Penny Tax revenues until the County adopts and implements appropriate compliance safeguards. For the reasons that follow, we affirm the circuit court's denial of the County's motion but reverse the denial of DOR's request for an injunction. DOR has established its entitlement to an injunction preventing the County from expending Penny Tax funds in violation of the Transportation Act.

### 1. The County's Motion for Temporary Injunction

"An order granting or denying an injunction is reviewed for abuse of discretion." *Strategic Res. Co. v. BCS Life Ins. Co.*, 367 S.C. 540, 544, 627 S.E.2d 687, 689 (2006) (citation omitted). "An injunction is a drastic remedy issued by the court in its discretion to prevent irreparable harm suffered by the plaintiff." *Scratch Golf*

*Co. v. Dunes West Residential Golf Properties, Inc.*, 361 S.C. 117, 121, 603 S.E.2d 905, 907 (2004) (citation omitted). "To obtain an injunction, a party must demonstrate irreparable harm, a likelihood of success on the merits, and the absence of an adequate remedy at law." *Denman v. City of Columbia*, 387 S.C. 131, 140, 691 S.E.2d 465, 470 (2010) (citation omitted)). "[I]n order to receive the aid of a Court of equity to enjoin a public corporation or department of government in the performance of actions or duties provided by statute, there must be allegations or showing that the public department or corporation has exercised its power in an arbitrary, oppressive or capricious manner." *Headdon v. State Highway Dep't*, 197 S.C. 118, 14 S.E.2d 586, 588 (1941).

The circuit court denied the County's motion for a temporary injunction finding that, in light of the circuit court's issuance of a writ of mandamus ordering DOR to remit and allocate Penny Tax revenues, the County could not show it would suffer irreparable harm and therefore an injunction was unnecessary. On appeal, the County argues that, even if it receives Penny Tax revenues, it nevertheless continues to suffer irreparable harm by virtue of what the County characterizes as DOR's "interfer[ence] with the County's implementation and operation of its Penny Tax Program." We disagree.

The circuit court properly found that, in light of the writ of mandamus directing DOR's continued remittance of Penny Tax Revenues, the County will not suffer any "negative financial consequences" and therefore the County cannot show irreparable harm. Accordingly, a preliminary injunction is unnecessary. *See Poynter Invs., Inc. v. Century Builders of Piedmont, Inc.*, 387 S.C. 583, 586, 694 S.E.2d 15, 17 (2010) (explaining a "preliminary injunction should issue only if necessary to preserve the status quo ante"). Further, DOR's actions in auditing the County and administering the Penny Tax are squarely within DOR's statutory duties and do not warrant an injunction. *See* S.C. Code Ann. § 12-4-325(B) (setting forth the broad scope of DOR authority which includes "administering *any South Carolina statute* which has not been held to be unconstitutional or unlawful by a final decision of a court of competent jurisdiction" (emphasis added)); *id.* § 12-4-387 (DOR is authorized "to conduct audits involving all taxes"); 42 Am. Jur. 2d Injunctions § 158 (in order to enjoin a governmental agency from exercising its discretion, a complainant must show the agency's actions are outside its statutory duties, or that the agency intends to act in bad faith, arbitrarily, capriciously, or in a "wantonly injurious manner"). We therefore affirm.[7]

---

[7] As an alternative sustaining ground, we also find the County has woefully failed

## 2. DOR's Motion for Injunction

Turning to DOR's request for injunctive relief, DOR contends the circuit court erred in finding it failed to demonstrate irreparable harm in support of its motion for an injunction because, as DOR asserted to the circuit court, the taxpayers of Richland County would suffer irreparable harm if the County is not required to follow the law. We agree.

It is axiomatic that the County's Ordinance may not expand the scope of expenditures authorized in the enabling provisions of the Transportation Act, which requires a nexus between expenditures and a transportation-related capital project. *See, e.g.*, S.C. Code Ann. § 4-37-30(A)(1)(a)–(c); *Sinkler v. County of Charleston*, 387 S.C. 67, 76–78, 690 S.E.2d 777, 781–82 (2010) (invalidating a county ordinance that failed to establish a development scheme as contemplated by the relevant enabling legislation and rejecting the county's argument that the flexibility and authority conferred by the enabling legislation authorized the county to employ measures beyond the scope of the enabling legislation); *Holler v. Ellisor*, 259 S.C. 283, 287, 191 S.E.2d 509, 510 (1972) (observing that local government enactments and regulations "must be authorized by the enabling act, at least, where they are enacted pursuant to the authority conferred by such act, and they can be no broader than the statutory grant of power"). A proper expenditure of Penny Tax funds must be tethered to a specific transportation-related capital project or the administration of a specific transportation project.

---

to demonstrate a likelihood of success on the merits with regard to its interpretation of the Transportation Act. *See, e.g.*, *Sinkler v. County of Charleston*, 387 S.C. 67, 76–78, 690 S.E.2d 777, 781–82 (2010) (invalidating a county ordinance that failed to establish a development scheme as contemplated by the relevant enabling legislation and rejecting the county's argument that the flexibility and authority conferred by the enabling legislation authorized the county to employ measures beyond the scope of the enabling legislation); *Holler v. Ellisor*, 259 S.C. 283, 287, 191 S.E.2d 509, 510 (1972) (observing that local government enactments and regulations "must be authorized by the enabling act, at least, where they are enacted pursuant to the authority conferred by such act, and they can be no broader than the statutory grant of power"). To the contrary, DOR has presented a compelling prima facie case that some of the County's expenditures of Penny Tax revenues are in violation of the Transportation Act.

In light of the County's many suspect expenditures of Penny Tax funds, DOR requested an injunction against the County prohibiting the further expenditure of Penny Tax funds until the County "adopts IRC 262/263A or some other acceptable alternative as a standard to be used to determine when expenditures are proper within the [Transportation] Act." Under these compelling circumstances, we find an injunction is appropriate. To ensure objective criteria establishing compliance with the Transportation Act, the County shall be subject to guidelines for determining whether expenses are properly allocable to a specific transportation project, or the direct administration of a specific transportation project. Accordingly, the County is hereby enjoined from violating the Transportation Act. We direct the circuit court, no later than thirty days following remand, to enter the preliminary injunction in accordance with this opinion.[8]

## D. DOR's Motion for the Appointment of a Receiver

Lastly, DOR contends the circuit court erred in denying its motion for the appointment of a receiver. We disagree and find no abuse of discretion. We affirm the circuit court's refusal to appoint a receiver.

South Carolina Code section 15-65-10 sets forth the circumstances under which the appointment of a receiver is appropriate. Before judgment is rendered,

> A receiver may be appointed by a judge of the circuit court . . . on the application of either party when he establishes an apparent right to property which is the subject of the action and which is in the possession of an adverse party and the property, or its rents and profits, are in danger of being lost or materially injured or impaired . . . .

*Id*. § 15-65-10(1).

"[T]he appointment of a receiver is within the discretion of the circuit judge."

---

[8] The injunction is effective today. We require the circuit court to issue a standalone injunction consistent with this opinion. We trust the County will comply with the injunction, but in the event of any alleged violation of the injunction, any enforcement action or rule to show cause shall be heard in the circuit court, subject to appellate review as provided by law.

*Midlands Util., Inc. v. S.C. Dep't of Health & Envtl. Control*, 301 S.C. 224, 228, 391 S.E.2d 535, 538 (1989) (citing *Kirven v. Lawrence*, 244 S.C. 572, 137 S.E.2d 764 (1964)).  "The appointment of a receiver is a drastic remedy, and should be granted only with reluctance and caution."  *Id*. (citing *Vasiliades v. Vasiliades*, 231 S.C. 366, 98 S.E.2d 810 (1957)).  "[A]s a rule, a receiver will not be appointed during the progress of a cause, unless there is the strongest reason to believe that the plaintiff is entitled to the relief demanded in his complaint, and there is danger that the property will be materially injured before the case can be determined." *Pelzer v. Hughes*, 27 S.C. 408, 416, 3 S.E. 781, 785 (1887) (internal quotation marks and citation omitted).

In affirming the denial of DOR's initial request for a receiver, we recognize that the trial court can order the repayment of any improper expenditures from the County's general fund.[9]  We trust that Richland County will abide by the injunction.  If, however, Richland County violates the injunction, DOR may renew its request for the appointment of a receiver.

### III.

Based on the foregoing, we affirm the trial court's issuance of a writ of mandamus, affirm the denial of the County's request for injunctive relief, reverse the denial of DOR's request for injunctive relief, affirm the refusal to appoint a receiver, and remand this case for further proceedings.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

**HEARN, FEW and JAMES, JJ., concur.  BEATTY, C.J., concurring in part and dissenting in part in a separate opinion.**

---

[9] In addition to the challenged expenditures that gave rise to this litigation, we further recognize it may be contended that the County expended Penny Tax funds contrary to the Transportation Act during the pendency of this appeal.  If the circuit court determines the County violated the Transportation Act during the pendency of the appeal by expending Penny Tax funds on matters unrelated to a transportation project or unrelated to the direct administration of a transportation project, the circuit court shall order the County to repay the improper expenditures from the County's general fund.

**CHIEF JUSTICE BEATTY:** I concur in part and dissent in part with the majority's decision. I concur with the majority's decision in all respects other than the extent of the injunction the majority authorizes the circuit court to grant to DOR, and the inference that DOR has broad powers to enforce any constitutional South Carolina statute.

DOR requested an injunction to prohibit Richland County from making any further expenditures of transportation penny tax revenue until the county adopted a penny tax expenditure evaluation process suitable to DOR. Notwithstanding the majority's statutory citations, DOR's demand in this regard is void of any statutory authority, and far exceeds its statutory authority to enforce the revenue statutes of this state.

In my view, DOR's enforcement authority in this case is limited to a legal challenge to the improper expenditure of penny tax revenue. Thus, I agree with the majority that DOR cannot refuse to disburse penny tax revenue to Richland County. If DOR mounts a legal challenge to an improper expenditure, the available relief should be limited to an injunction of further use of penny tax funds for the identified improper expenditure and the reimbursement of the improperly expended funds. The Optional Methods for Financing Transportation Facilities Act is like every other law, it cannot be enforced until it is violated. Although there are allegations of past violations, the remedy authorized by the majority will allow DOR to impose its preferred method of project evaluation to future project expenditures when no violation as to those expenditures has been identified.

DOR has no statutory authority to micro-manage a county's governing entity by demanding a particular project evaluation process, or any other evaluation process, be used in determining which expenditures are in compliance with the transportation penny tax statute. To allow DOR to make such a demand of a county government, in effect, gives DOR pre-approval authority of each project. In my view, this would be a clear violation of the County Home Rule Act. S.C. Code Ann. §§ 4-9-10 to -1230 (1986 & Supp. 2017). Specifically, the code section that authorizes county government "to provide for an accounting and reporting system whereby funds are received, safely kept, allocated and disbursed." *Id*. § 4-9-30(8) (1986). The majority's grant of plenary authority to DOR leaves the county with no recourse but to resort to preemptive litigation. I would limit DOR's injunction to those expenditures declared improper by the circuit court.

Additionally, I disagree with the majority's inference that section 12-4-325(B) imbues DOR with authority to enforce any constitutional South Carolina statute. In

my view, this interpretation of section 12-4-325(B) is taken out of context and may be misleading.

Section 12-4-325 is entitled "Defense and indemnification of Department of Revenue employees and officers." Subsection (B) of section 12-4-325 states in pertinent part:

> Department of Revenue employees and officers are acting within the scope of their employment when administering any South Carolina statute which has not been held to be unconstitutional or unlawful.

S.C. Code Ann. § 12-4-325(B) (2014). I do not interpret this statute to grant broad powers or authority to DOR. In my view, this language refers to the employment status of employees when performing their work-related duties. Moreover, the powers and duties of DOR are found in sections 12-4-310 and 12-4-320. *See* S.C. Code Ann. § 12-4-310 (Supp. 2017) (identifying and enumerating the mandated powers and duties of DOR); *id*. § 12-4-320 (2014) (identifying and enumerating the permissive powers and duties of DOR). Neither section authorizes DOR to require that a county use the DOR's preferred method of project evaluation.