# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

South Carolina Public Interest Foundation, Edward D. Sloan, Jr., and William B. Depass, Jr., individually, and on behalf of others similarly situated, Appellants,

v.

Richland County, Respondent,

And Central Midlands Regional Transit Authority, Intervenor/Respondent.

Appellate Case No. 2018-000794

———

Appeal From Richland County
G. Thomas Cooper, Jr., Circuit Court Judge

———

Opinion No. 5865
Heard April 21, 2021 – Filed October 6, 2021

———

## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

———

James G. Carpenter, of Carpenter Law Firm, PC, of Greenville, for Appellants.

Elizabeth Van Doren Gray, Robert E. Tyson, Jr., and Benjamin Rogers Gooding, of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for Intervenor/Respondent Central Midlands Regional Transit Authority.

Andrew F. Lindemann, of Lindemann & Davis, P.A., of Columbia, for Respondent Richland County.

---

**HEWITT, J.:** This case is about the "penny tax" Richland County enacted in 2012. The tax was authorized by the Optional Methods for Financing Transportation Facilities Act, currently codified at S.C. Code Ann. §§ 4-37-10 to -50 (2021).

There are two main issues. The first is whether it is lawful to use penny tax revenue to fund the continued operation of the bus system commonly known as "the Comet." The circuit court held this spending was indeed lawful and granted a summary judgment to the entity operating the Comet—the Central Midlands Regional Transportation Authority.

We affirm that judgment and hold it is proper under the statute to use tax revenue for the continued operation of a mass transit system. That use also meets the guidance our supreme court gave when it considered a prior dispute about this penny tax. The court held proper expenditures "must be tethered to a specific transportation-related capital project *or* the administration of a specific transportation project." *Richland County v. S.C. Dep't of Revenue*, 422 S.C. 292, 312, 811 S.E.2d 758, 768 (2018) (emphasis added). Put simply, we believe running a mass transit system falls under "the administration of a specific transportation project."

The second issue is whether the circuit court erred in dismissing various claims against Richland County for an alleged failure to prosecute those claims. As far as we can discover, no case upholds a dismissal with prejudice for this sort of pre-trial failure to prosecute. Thus, we reverse the judgment dismissing the claims against the County and remand for further proceedings.

## FACTS

In July 2012, Richland County Council passed an ordinance setting a referendum for that November. The referendum sought voter approval of a one percent sales and use tax to fund three transportation projects. The first project was $656 million for improvements to highways, roads, streets, intersections, bridges, and related drainage system improvements. The third project was roughly $80 million for improvements to sidewalks, bike paths, intersections and greenways.

The second project—the main issue here—called for spending $301 million for "[c]ontinued operation of mass transit services provided by Central Midlands Regional Transit Authority including implementation of near, mid and long-term service improvements." The November referendum passed. The penny tax became effective in May 2013.

Appellants are a non-profit organization and two individuals. They sued the County in May 2016, about three and a half years after voters approved the referendum. The circuit court granted the Comet's motion to intervene.

The case was designated complex. The circuit court issued a consent scheduling order with a discovery deadline in July 2017 and a dispositive motions deadline in September 2017. None of the parties requested any extensions, engaged in any formal discovery, or scheduled any depositions.

The County served its motion to dismiss at the dispositive motions deadline. The County alternatively sought summary judgment. The Comet served a motion for summary judgment as well. The circuit court heard the motions in a single hearing in October 2017, about a month after the motions were filed.

The circuit court ultimately issued a written order granting the County's motion to dismiss, ruling Appellants had "taken no action to prosecute their claims in the eighteen or so months since the complaint was filed." The court held dismissal was warranted under Rule 41(b), SCRCP, and the court's inherent authority. The court specified the dismissal was with prejudice. Appellants' motion to reconsider was denied.

The circuit court granted summary judgment to the Comet around the same time the court dismissed Appellants' claims against the County. The court held the enabling statutes did not prohibit using penny tax funds to operate the Comet because the statute listed "mass transit systems" as an allowable transportation-related project. The court rejected Appellants' argument that tax revenues could only be used for the Comet's "capital costs"—not for operating or administrative expenses—as inconsistent with the statute's preamble and plain language.

**ISSUES**

1. Whether the circuit court erred in ruling penny tax revenue could be used to fund the Comet's operation.

2. Whether the circuit court erred in dismissing Appellants' claims against the County for failure to prosecute.

**PROPER USE OF PENNY TAX FUNDS**

The legislature enacted the Optional Methods for Financing Transportation Facilities Act in 1995. *See* Act No. 52, 1995 S.C. Acts 321-334. The first section of the Act

contained "findings" that each county would be "authorized to establish transportation authorities and to finance . . . the cost of acquiring, designing, constructing, equipping and operating highways, roads, streets, and bridges, and other transportation-related projects . . . ." *Id*. at 321. The original Act explained a county's governing body could impose this tax by enacting an ordinance, subject to a referendum, and mandated that the ordinance specify and describe "the project for which the proceeds of the tax are to be used." S.C. Code Ann. § 4-37-30(A)(1)(a) (Supp. 1995). It also set out a list of allowable projects. § 4-37-30(A)(1)(a)(i) (Supp. 1995).

The legislature amended the Act five years later. *See* Act. No. 368, 2000 S.C. Acts 2486-2494. There were no changes to the requirements for an ordinance or a referendum; however, the amendment added "mass transit systems" and "greenbelts" to the list of acceptable projects. *See* S.C. Code Ann. § 4-37-30(A)(1)(i) (2011).

Appellants argue that funds from the penny tax may only be used for the Comet's "capital expenditures" and may not be used for its continued operation. They appear to define "capital costs" as generally constituting one-time costs incurred for the creation or improvement of property such as buildings, infrastructure, or equipment.

We respectfully disagree. We begin with the statute's language. There is some textual support for Appellants' argument that the Act favors expenses tied to things like infrastructure and equipment. The Act's title refers to financing transportation "facilities." Still, the Act begins with legislative findings that the Act allows counties to finance the cost of "acquiring, designing, constructing, equipping and operating highways, roads . . . and other *transportation-related projects*." Act. No. 52, 1995 S.C. Acts 321 (emphasis added). And, those same findings are not limited to financing the cost of designing and building a project. They directly refer to "operating" the project. These legislative findings have never been changed. The 2000 amendment added "mass transit systems" and "greenbelts" to the list of allowable projects in section 4-37-30(A)(1)(a)(i). For these reasons, we agree with the circuit court that the statute's language authorizes spending penny tax funds on operating transportation-related projects, including mass transit systems.

We must mention two other parts of the statutory language. The first is the Act's use of the words "capital costs," which is not a defined term. The Act uses this term once—in mandating that the ordinance include the "estimated capital cost" of each project to be funded by the penny tax and the principal amount of bonds to be supported by the tax. *See* § 4-37-30(A)(1)(c).

We do not agree with Appellants' argument that this sole reference to capital costs outweighs the Act's expressly articulated purpose of allowing counties to use penny tax revenue to finance the operation of transportation-related projects. Appellants' argument is also difficult to square with the fact that a mass transit system is specifically identified in the statute as an acceptable transportation-related project. The statute explains that penny tax revenue may only be used "for the purpose stated in the imposition ordinance." § 4-37-30(A)(15). The ordinance must, of course, be consistent with the Act's purpose. But as we noted above, operating a mass transit system is consistent with that purpose.

The last bit of statutory language we must address is an awkward phrase in the list of allowable projects. The statute says projects funded by the tax may include:

> highways, roads, streets, bridges, mass transit systems, greenbelts, and other *transportation-related projects facilities* including, but not limited to, drainage facilities relating to the highways, roads, streets, bridges, and other transportation-related projects.

Section 4-37-30(A)(1)(a)(i) (emphasis added).

We do not know what to make of the word sequence "projects facilities." Perhaps either "projects" or "facilities" was included by mistake. Another explanation may be that there was supposed to be an "and" or "or" between them. The title of the statute says the statute is about "transportation facilities," but the Act's legislative findings refer to "transportation-related projects," and a later provision of the very same statute repeatedly uses the same term—"transportation-related projects." *See* § 4-37-30(B)(1)(a). Overall, we agree the best reading is the one the circuit court applied: the statute authorizes spending funds on operating transportation-related projects, not just transportation-related facilities.

**RICHLAND COUNTY V. DEPARTMENT OF REVENUE**

We noted at the beginning that our interpretation of the statute was consistent with that of our supreme court when it considered a prior dispute about this penny tax. Around the same time Appellants brought this lawsuit against the County, the County filed its own suit against the South Carolina Department of Revenue (DOR). DOR was refusing to remit penny tax funds to the County and claimed the County was spending tax funds on unlawful purposes. Chief among these alleged unlawful purposes were public relations fees and a mentor-mentee program.

Our supreme court recognized that DOR had a duty to ensure "the County's expenditures of Penny Tax revenues comply with the revenue laws DOR is charged

with enforcing." *Richland County*, 422 S.C. at 306, 811 S.E.2d at 765. The court also issued an injunction prohibiting the County from violating the Act. *Id*. at 311-12, 811 S.E.2d at 768-69.

Appellants claim our supreme court's opinion endorsed capitalization standards from the Internal Revenue Code as the standard for determining whether expenditures are lawful under the enabling statutes for this penny tax. We do not agree. The court decreed that the County would be "subject to guidelines for determining whether expenses are properly allocable to a specific transportation project, or the direct administration of a specific transportation project," but it did not adopt the argument that the Internal Revenue Code controlled. *Id*. at 312, 811 S.E.2d at 768. The court held penny tax funds "must be tethered to a specific transportation-related capital project *or* the administration of a specific transportation project." *Id*. (emphasis added). As with our reading of the statutory language, we believe the best reading of the court's opinion is that it requires penny tax funds be tethered to building or operating a "transportation-related project."

**FAILURE TO PROSECUTE**

Appellants' amended complaint against the County purported to state seven causes of action. The first was Appellants' claim that the County violated the statutes by using penny tax funds to operate the Comet. In the remaining claims, Appellants insisted the County was violating procurement statutes and parts of the ordinance related to audits and a budget.

The circuit court dismissed Appellants' claims against the County pursuant to Rule 41(b), SCRCP and the court's inherent authority based on its view that Appellants had not actively prosecuted the case. The court noted Appellants had not served any discovery even though the complex case order at the beginning of the litigation said "[i]t is expected there will be significant discovery sought in this case because of the issues." The court also noted Appellants did not file any dispositive motions.

Here, as below, Appellants argue they opted to use requests under the Freedom of Information Act in lieu of formal discovery. They also point out that they defeated an early effort to have the case dismissed or decided on the pleadings.

Appellants additionally argue the progress of this case was stalled by the DOR case. Our supreme court heard oral arguments in that case three months before the discovery and dispositive motions deadlines passed in this case. Indeed, at the circuit court stage, Appellants told the court that this case "overlapped significantly"

with the DOR case and that the court should consider waiting for our supreme court's decision before joining the two cases together.

We share the circuit court's concern about the lack of action in prosecuting this case. Appellants did not serve any discovery requests until after the County and the Comet filed dispositive motions. This was over a year after the case began, and two months past the discovery deadline set forth in the consent scheduling order. In an effort to evade dismissal, Appellants pointed the circuit court to their late discovery request, to their recently-filed FOIA request, and told the court they wanted to conduct depositions if the opposing parties identified any witnesses. But a scheduling order "is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Forstmann v. Culp*, 114 F.R.D. 83, 85 (M.D.N.C. 1987) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)) (addressing Rule 16 of the Federal Rules of Civil Procedure). As the circuit court observed, courts must have the authority to dismiss a case in the event a plaintiff unreasonably neglects to prosecute if courts are to maintain control of their dockets. *See Don Shevey & Spires, Inc. v. Am. Motors Realty Corp.*, 279 S.C. 58, 60, 301 S.E.2d 757, 758 (1983) (making this same observation).

Still, and even when reviewed for abuse of discretion, we cannot affirm. Consider *Don Shevey & Spires*, where the plaintiff served a summons, served a complaint, but delayed fifteen months in filing the summons with the court even though a statute required its filing within ten days of service. 279 S.C. at 59, 301 S.E.2d at 758. Even there (a situation of complete inaction), the suit was dismissed without prejudice— not "with prejudice," as was done here. Consider also *Small v. Mungo*, where our supreme court affirmed a dismissal based on counsel's failure to appear for trial but modified the dismissal from "with prejudice" to "without prejudice." 254 S.C. 438, 443-44, 175 S.E.2d 802, 804 (1970). In *McComas v. Ross*, this court surveyed precedent and said dismissals for failure to prosecute typically involved things like repeated warnings to the offending party, multiple opportunities to proceed with trial, unreasonable neglect, or deliberate indifference to the defendant's rights. 368 S.C. 59, 62-63, 626 S.E.2d 902, 904 (Ct. App. 2006). We cannot say anything like that occurred here.

As far as we can discover, no South Carolina case upholds a dismissal with prejudice for this sort of pre-trial failure to prosecute. There can be no question Appellants should have served discovery sooner, requested an extension of the scheduling order before it expired, and formally requested a stay if they thought it made sense for the circuit court to wait for our supreme court's ruling in the DOR case. Possible consequences for failing to do these things would certainly include barring Appellants from filing late discovery requests, disallowing any late dispositive

motions, and ordering the case to proceed per the scheduling order. The proper action remains up to the circuit court in the first instance. We hold only that it was an abuse of discretion to dismiss Appellants' case with prejudice.

## ALTERNATIVE ARGUMENTS

Two arguments are offered as different avenues for affirming the dismissal of Appellants' claims against the County. First, the County contends we should dismiss this case as duplicative in light of the County's litigation against DOR.

As we noted in the section describing the DOR litigation, our supreme court recognized DOR's authority to certify the County was spending penny tax funds appropriately. After that case was remanded, the circuit court issued a preliminary injunction adopting guidelines for the appropriate use of penny tax revenue. We were informed during the oral argument in this case that DOR has been conducting an audit of the County's use of penny tax funds and that the audit has concluded.

Dismissing this litigation as duplicative of the DOR case has some appeal. The fact that DOR was recognized as the authority to police this area points away from the need for this litigation. Still, we cannot square dismissal on this ground with precedent that reads the procedural rule on duplicate cases narrowly. In *Capital City Insurance Co. v. BP Staff, Inc.*, this court said "the claim must be precisely or substantially the same in both proceedings in order for the drastic remedy of dismissal to be appropriate." 382 S.C. 92, 106, 674 S.E.2d 524, 532 (Ct. App. 2009) (interpreting Rule 12(b)(8), SCRCP). Similarly, in *Freemantle v. Preston*, our supreme court explained that although two cases sought the same relief (both looked to invalidate Anderson County's severance agreement with a former employee), the parties and claims were not substantially similar to warrant dismissal. 398 S.C. 186, 196 n.4, 728 S.E.2d 40, 45 n.4 (2012). The same is true here. There is no denying some of Appellants' claims are different from the claims in the DOR litigation.

The second alternative argument is standing. The circuit court ruled at the beginning stage of this case that Appellants possessed both taxpayer standing and public importance standing. The court found taxpayer standing has a long history in South Carolina and noted that all three Appellants had paid the penny tax.

We will not rule on this argument. The County did not argue lack of standing on appeal. The argument was brought to us by an amicus. Our supreme court has declined to rule on standing when it was raised by an amicus. *See James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732-33 (2010); *see also* Rule 213, SCACR

("The [amicus] brief shall be limited to argument of the issues on appeal as presented by the parties . . . .").  We believe the prudent course is to follow that lead.

**CONCLUSION**

For the foregoing reasons, we affirm the grant of summary judgment to the Comet and reverse the circuit court's dismissal of the claims against County.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

**LOCKEMY, C.J., and HUFF, J., concur.**